IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| KAITLIN M., | * |  |
| --- | --- | --- |
|   Plaintiff, | * |  |
| vs. | * | Civil Action No. ADC-18-0305 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,[1] | * |  |
|   Defendant. | * |  |

## MEMORANDUM OPINION

On January 31, 2018, Kaitlin M. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint, the parties' cross-motions for summary judgment (ECF Nos. 17, 21), and the response thereto (ECF No. 24), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 17) and Defendant's Motion for Summary Judgment (ECF No. 21) are DENIED, the decision of the SSA is REVERSED, and the case is REMANDED to the SSA for further analysis in accordance with this opinion.

### PROCEDURAL HISTORY

On February 28, 2014, Plaintiff filed a Title II application for DIB and a Title XVI

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner of Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

1

application for SSI, alleging disability beginning on November 22, 2013. Her claims were denied initially and upon reconsideration on August 11, 2014 and January 9, 2015, respectively. Subsequently, on January 29, 2015, Plaintiff filed a written request for a hearing and, on October 24, 2016, an Administrative Law Judge ("ALJ") presided over a hearing. On December 16, 2016, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act [(the "Act")], from November 22, 2013, through the date of this decision." ECF No. 10 at 25. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on November 29, 2017, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the SSA. *See* 20 C.F.R. § 416.1481 (2018); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On January 31, 2018, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of her disability application. On October 9, 2018, Plaintiff filed a Motion for Summary Judgment, and Defendant filed a Motion for Summary Judgment on January 23, 2019. On February 21, 2019, Plaintiff responded to Defendant's motion.[2] This matter is now fully briefed and the Court has reviewed both parties' motions.

## STANDARD OF REVIEW

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99

---

[2] On February 28, 2019, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

2

F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the [SSA]'s finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal citations and quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations and quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB and SSI, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant shall be determined to be under disability where "h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration

4

requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R.

§ 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *2–13 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *6–8.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1),

404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

**<u>ALJ DETERMINATION</u>**

In the instant matter, with regard to Plaintiff's DIB claim, the ALJ preliminarily found that Plaintiff met the insured status requirements of Title II of the Act through December 31, 2018. ECF No. 10 at 17. The ALJ then performed the sequential evaluation and found at step one that Plaintiff "ha[d] not engaged in substantial gainful activity since November 22, 2013, the alleged onset date." *Id.* At step two, the ALJ found that Plaintiff had the severe impairments of "brain stem injury, pelvis and rib injury, depression, and bilateral carpal tunnel syndrome." *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 18. At step four, the ALJ determined that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for the following limitations. [Plaintiff] can sit for 6 hours out of an 8-hour workday. [Plaintiff] can stand or walk for 2 hours out of an 8-hour workday. [Plaintiff] can frequently handle, finger, and feel bilaterally. [Plaintiff] can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. [Plaintiff] can never climb ladders or scaffolds. [Plaintiff] can perform simple routine tasks not at a production pace. [Plaintiff] is limited to simple work related decisions. [Plaintiff] can only occasionally tolerate changes in workplace settings. [Plaintiff] can occasionally interact with supervisors, co-workers, and the public. [Plaintiff] can never be exposed to moving mechanical parts or unprotected heights. [Plaintiff] is limited to communicating simple information, both orally and in writing.

*Id.* at 19. The ALJ then determined that Plaintiff had past relevant work as a dental assistant, but that she is unable to perform such work. *Id.* at 23. Finally, at step five, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* at 24. Thus, the

ALJ concluded that Plaintiff "ha[d] not been under a disability, as defined in the [Act], from November 22, 2013, through the date of this decision." *Id.* at 25.

## DISCUSSION

On appeal, Plaintiff argues that substantial evidence did not support the ALJ's RFC determination and alleges two specific errors: (1) that the ALJ failed to explain how Plaintiff had the ability to "frequently handle, finger, and feel bilaterally" for a full workday or discuss conflicting evidence regarding her ability to use her hands; and (2) that the ALJ failed to include a limitation for Plaintiff's visual impairments, despite evidence in the record demonstrating the impact those impairments had on her ability to work. ECF No. 17-1 at 9–19. The Court agrees.

In determining RFC specifically, an ALJ must take into account the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds. 20 C.F.R. §§ 404.1545(a), 416.945(a) (ordering the ALJ to consider the entire record); SSR 96-8p, 1996 WL 374184, at *2 (defining the RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities). Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

Social Security Ruling ("SSR") 96-8p provides the proper framework for evaluating a claimant's RFC. Specifically, the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material

8

> inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted). Furthermore, "[t]he Ruling instructs that the [RFC] 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations. Only after that may [the RFC] be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (footnote omitted) (quoting SSR 96-8p, 1996 WL 374184).

Plaintiff first challenges the ALJ's finding that she can "frequently handle, finger, and feel bilaterally." ECF No. 17-1 at 11–15. According to Plaintiff, "the totality of the medical record showed that Plaintiff would not be capable of using her hands frequently in an eight-hour workday" but the ALJ failed to resolve inconsistencies in the evidence relating to her impairments and instead only cited evidence supporting his finding. *Id.* at 12–15. Plaintiff also alleges that the ALJ failed to explain how Plaintiff could sustain manipulative functions for a full workday. *Id.*

In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including the failure by the ALJ to conduct a function-by-function analysis in the RFC assessment. 780 F.3d at 635–36. Specifically, the Fourth Circuit noted that "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review," remand may be necessary. *Id.* at 636 (citation and internal quotation marks omitted).

Here, the ALJ's RFC determination concluded that Plaintiff could "frequently handle, finger, and feel bilaterally," but failed to evaluate her ability to perform these functions for a full

9

workday. ECF No. 10 at 19, 22. To support his conclusion, the ALJ provided the following explanation:

> In terms of [Plaintiff]'s alleged hand and wrist pain, the record indicates [Plaintiff] has been noted to have difficulties with manipulation. During a medical consultative examination [i]n June 2014, she was able to dress and undress but had difficulties with her socks and shoes. She has shown difficulties with fine motor function with writing tests, with reported pain during assigned tasks, and slowed pace or dropped items during peg tests. The record also indicates [Plaintiff] was diagnosed with carpal tunnel syndrome in 2016 after reporting recent onset of persisting pain of the bilateral hands or wrists. She showed a positive Tinel's sign on the left hand and positive Phalen's test more present on the left arm and hand. She also showed a sensory deficit in the tips of her fingers. Though a 2014 right hand x-ray showed mild swelling, a 2016 scan of [Plaintiff]'s wrist found tendinosis and low grade interstitial partial tear of the extensor carpal ulnaris tendon and partial tear of the radial aspect of the triangular fibrocartilage.
>
> On the other hand, a nerve conduction study found no evidence of cervical radiculopathy or other abnormalities. During a February 2016 evaluation at the Annapolis Hand Center, [Plaintiff] showed no instability or visible swelling. She has been able to complete handwriting tasks at normal speed. Evaluations have not noted consistent loss of grip strength.

*Id.* at 22 (internal record citations omitted). Remand is appropriate here because "although the ALJ concluded that [Plaintiff] c[ould] perform [manipulative] functions, he said nothing about [Plaintiff]'s ability to perform them for a full workday. Th[is] missing analysis is especially troubling because the record contains conflicting evidence as to [Plaintiff]'s residual functional capacity—evidence that the ALJ did not address." *Mascio*, 780 F.3d at 637.

In his explanation, the ALJ appears to have relied upon the February 2016 evaluation by the Annapolis Hand Center to support his conclusion that Plaintiff can frequently handle, finger, and feel bilaterally. However, as Plaintiff correctly notes, the ALJ failed to address or resolve conflicting evidence in the evaluation which shows Plaintiff has difficulty performing these

10

functions. Although the evaluating physician observed "no visible tenosynovitis or swelling" or "instability to the hand," he noted that Plaintiff exhibited "diminished grip strength," sensory deficit in the tips of her fingers, positive Tinel's sign on the left hand, positive Phalen's test bilaterally, numbness in her thumb, index, and middle finger on the left hand, and pain in the right hand. ECF No. 10 at 913. During an exercise involving writing, the physician also observed that Plaintiff "kept on re-grasping the pencil because of the pain in the hand" and it "require[d] a lot of effort for her to write a sentence." *Id.* The ALJ neglected to address many of these findings and failed to explain why he credited the findings of no instability or swelling over the other findings demonstrating difficulty with manipulative functions. "Because [the court is] left to guess about how the ALJ arrived at his conclusions on [Plaintiff]'s ability to perform relevant functions[,] . . . remand is necessary." *Mascio*, 780 F.3d at 637.

Plaintiff also challenges the ALJ's failure to account for Plaintiff's visual limitations. ECF No. 17-1 at 15–18. Although he declined to include a limitation, the ALJ provided the following analysis of Plaintiff's visual impairments at step four:

> In terms of [Plaintiff]'s alleged visual difficulties, the record does indicate [Plaintiff] reported persisting difficulties using her left eye. A visual evaluation found right superior oblique palsy, convergence insufficiency, and deficiencies of smooth pursuit eye movements. She also showed limited visual spatial recall. [Plaintiff] was prescribed neurovision rehabilitation. Though the record does indicate she has some visual limitations, given the treatment prescribed, it does not support she is as limited as alleged. She has not shown abnormal visual fields or observed diplopia. Updated 2016 head scans found no abnormalities of the head and orbis.

ECF No. 10 at 21 (internal record citations omitted).

Remand is also appropriate in this instance because the ALJ failed to discuss and resolve conflicting evidence regarding Plaintiff's visual impairments. *Hancock v. Barnhart*, 206 F.Supp.2d 757, 764 (W.D.Va. 2002) ("A . . . court will not disturb an ALJ's credibility

11

determinations or revisit the ALJ's resolution of conflicting evidence. However, if the ALJ appears, without stating a reason, to have credited some probative evidence over other evidence or to have ignored evidence altogether, a remand or reversal may be necessary.").

Here, the ALJ cited some evidence demonstrating Plaintiff's visual deficits and acknowledged that she was prescribed neurovision rehabilitation, but ultimately concluded that "given the treatment prescribed, it does not support she is as limited as alleged." ECF No. 10 at 21. However, the ALJ neglected to note that Plaintiff was prescribed fifty-three-minute neurovision rehabilitation therapy sessions twice per week for an estimated six to eight months. *Id.* at 758. The ALJ also failed to discuss the evaluating optometrist's opinion that Plaintiff had "significant deficiencies within her overall visual function," including with visual alignment, convergence, binocular integration, oculomotor control, and visual perceptual skill level, and that these impairments "are impacting her ability to work and also her activities of daily living in general." *Id.* Furthermore, the ALJ's observation that Plaintiff did not exhibit diplopia is contradicted by the neurovision rehabilitation evaluation, in which the optometrist observed "intermittent diplopia." *Id.* at 757.

There is both evidence supporting the ALJ's decision not to include a visual limitation and evidence indicating Plaintiff's visual impairments will impact her ability to perform work-related activities, and "[i]t is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence." *Boston v. Barnhart*, 332 F.Supp.2d 879, 890 (D.Md. 2004) (citing *Hays*, 907 F.2d at 1456). "It is not for this Court to weigh the evidence and decide how the ALJ concluded the plaintiff's RFC." *Id.* Accordingly, the Court must remand the case to the SSA for further consideration as the ALJ's failure to discuss and resolve conflicts in the evidence leaves the Court unable to determine if his findings are supported by substantial evidence.

## CONCLUSION

In summation, the Court finds that the ALJ improperly found that Plaintiff was "not disabled" within the meaning of the Act from November 22, 2013 through the date of the ALJ's decision. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 17) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 21) is DENIED, and the decision of the SSA is REMANDED for further proceedings in accordance with this opinion. In so holding, the Court expresses no opinion as to the ALJ's ultimate disability determination. The clerk is directed to CLOSE this case.

Date: 22 March 2019

A. David Copperthite
United States Magistrate Judge